Filed 8/26/13  In re Gerardo M. CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re GERARDO M., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>GERARDO M.,<br><br>      Defendant and Appellant. | F066407<br><br>(Super. Ct. No. JJD066460)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Tulare County.  Juliet L. Boccone, Judge.

Arthur L. Bowie, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Paul A. Bernardino, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Cornell, Acting P.J., Kane, J., and Detjen, J.

At a jurisdiction hearing, the juvenile court found true an allegation that appellant, Gerardo M., a minor, committed second degree robbery (Pen. Code, §§ 211, 212.5, subd. (c)).  At the subsequent disposition hearing, the court adjudged appellant a ward of the court under Welfare and Institutions Code section 602[1] and ordered, inter alia, that appellant be committed to the Tulare County Youth Facility (Youth Facility) for a period of 365 days.  The instant appeal, from the orders made at the jurisdiction and disposition hearings, followed.

On appeal, appellant contends the evidence was insufficient to support his commitment to the Youth Facility.  We affirm.

**FACTUAL BACKGROUND**

*The Instant Offense*

On August 30, 2012 (August 30), at approximately 4:30 p.m., sixteen-year-old Marcus E. (Marcus), who had his bicycle with him as he was walking home from school, stopped at a store and, leaving his bicycle outside, entered the store.[2]  When he came out he saw appellant and four other persons.  Marcus picked up his bicycle and started walking in the direction of a nearby park, at which point appellant "came over and he started talking to [Marcus]."  Marcus had "seen [appellant] before that" at school.  Appellant asked Marcus if he had any marijuana on him, and Marcus said he did not.

At one point, appellant "signaled" a "person" to "come over," and a male wearing sunglasses (second person) approached, told Marcus he liked Marcus's bicycle, and said "I like it so get off of it."  Marcus refused to relinquish his bicycle and the second person again directed Marcus to "[g]et off of it."  Marcus turned around and saw two persons

---

[1]    All further statutory references are to the Welfare and Institutions Code.

[2]    Except as otherwise indicated, our factual summary of the instant offense is taken from Marcus's testimony.

standing behind him.  He turned back to face appellant and the second person, and the second person again demanded the bicycle; asked "you want to make this rough?"; and threatened to "stick" Marcus if he did not hand over his bicycle.

Marcus "backed up," "put the bike on the ground" and looked at appellant.  At that point, appellant "kind of showed [Marcus] the knife in his pocket," and then "put it back into his pocket."  Marcus then turned toward the second person and said, "you guys aren't going to get this bike," at which point the second person "pulled out" a knife with a blade approximately 12 inches long.  Seeing the knife, Marcus became frightened and "just walked away."  He heard appellant say, "you better not snitch."  He also heard someone pick up his bicycle and ride off on it.  He did not see who took the bicycle and he never got it back.

Jose N. (Jose) testified to the following:  On August 30, he was walking near the Sunnyside Market after school when he saw appellant "talking to some kid."  Jose did not know what they were talking about.  However, he recalled telling a police officer that the two were talking about "going with the kid to talk to him" about "[s]ome money[.]"  Appellant said "they were going to take it."

Jose further testified to the following:  He saw a person with a kitchen knife, threatening "[t]he [boy] with the bike."  Appellant was present at the scene but he was not the one with the knife.  At some point the person with the knife rode off on the bicycle.

Porterville Police Officer Vincent Spencer testified to the following:  He questioned appellant on August 31, 2012, about "this event."  Appellant stated "he was in the area of Putnam and Leggett after school at approximately 3:30," he "went and bought a soda," and he walked to his house and stayed there the rest of the evening."  Appellant denied any "involvement" in "the incident."  Spencer searched appellant's residence, and found neither a bicycle nor a knife.

3

*Additional Factual Background*[3]

Appellant admitted he was an "associate of Northern structured gangs .…" In May 2012, he got a gang-related tattoo on his chest.

Appellant told the probation officer he first consumed alcohol at age 15, he drinks alcohol one to two times per month, he smokes marijuana one to two times per week, and in middle school he was suspended "a couple of times … for fighting and possession of marijuana."

Appellant now attends high school, where he has had "several" disciplinary "referrals" for fighting and "gang affiliation." Appellant "was on a Formal Probation Contract … due to his behavior issues." Because it was early in the semester at the time of the preparation of the RPO, no grades were then available, but the previous semester appellant received grades of A-, B-, D, D+, D- and F. He reported he is "doing well so far this year." In middle school he was "found in possession of marijuana; and on a separate occasion, was found smoking marijuana on school grounds."

Appellant's parents told the probation officer they had "no idea" that appellant was using marijuana and alcohol and were "not aware of … any gang involvement .…" They recently noticed appellant's tattoo and told appellant they would pay to have it removed. Appellant agreed. As punishment, appellant's parents took away his cell phone and prohibited him from leaving home except to go to school.

Appellant's father stated he and appellant's mother "never have any trouble with [appellant]," and appellant has a C average in school, is "very well behaved," "listens to his parents, helps around the house, attends church regularly, and works in the fields on the weekends."

---

[3]     Information in this section is taken from the report of the probation officer (RPO).

4

The probation officer recommended appellant be committed to the Youth Facility. She "deemed inappropriate at this time" placement in the Tulare County Youth Correctional Center Unit Program, the Tulare County Youth Treatment Center Unit Program, a group home, or the home of his parents or some other relative(s). The officer opined that "it appears [appellant] is in need of a secured facility, to adequately address his substance abuse issues, behavioral issues, and disregard for authority" and that appellant "would benefit more from the structure of [the Youth Facility]."

The officer further stated that in the Youth Facility, appellant "will have an opportunity to participate in substance abuse counseling, while in a secured setting" and "would greatly benefit from" Youth Facility programs "such as Character Counts, Corrective Thinking, and Social Thinking Skills," and the Youth Facility "will provide [appellant] with twenty-four … hour supervision and can ensure [appellant] refrains from the use of any illegal substances" and "help instill discipline in [appellant], by providing him with a structured setting and holding him accountable for his actions."

## DISCUSSION

"A juvenile court's commitment order may be reversed on appeal only upon a showing the court abused its discretion." (*In re Robert H.* (2002) 96 Cal.App.4th 1317, 1329-1330; accord, *In re Todd W.* (1979) 96 Cal.App.3d 408, 416.) Appellant contends the juvenile court abused its discretion in ordering a one-year Youth Facility commitment. Specifically, appellant argues the commitment order "simply boiled down to a matter of punishment, rather than [his] rehabilitative needs." He asserts there was "no substantial evidence" that "lock[ing] [him] up for a year" would meet those needs. Given appellant's "brief history with the juvenile justice system, [and] the facts, circumstances and unsophisticated criminal nature of the sustained offense," he argues, his rehabilitative needs could have been met by, and the court should have ordered, a

5

"less restrictive dispositional option[]." Appellant's challenge to the disposition order is without merit.

A commitment to the Youth Facility requires a two-part showing. There must be evidence demonstrating (1) such a commitment will be of benefit to the minor, and (2) less restrictive alternatives are ineffective or inappropriate. (Cf. *In re Teofilio A.* (1989) 210 Cal.App.3d 571, 576 (*Teofilio A.*); accord, *In re Pedro M.* (2000) 81 Cal.App.4th 550, 556, disapproved on another ground in *People v. Gonzales* (2013) 56 Cal.4th 353, 375, fn. 6.)[4] An appellate court will not lightly substitute its judgment for that of the juvenile court but rather must indulge all reasonable inferences in favor of the decision and affirm the decision if it is supported by substantial evidence. (*In re Angela M.* (2003) 111 Cal.App.4th 1392, 1396; *In re Asean D.* (1993) 14 Cal.App.4th 467, 473 (*Asean D.*).)

"'In determining whether there was substantial evidence to support the commitment, we must examine the record presented at the disposition hearing in light of the purposes of the Juvenile Court Law. (§ 200 et seq.…)'" (*In re Lorenza M.* (1989) 212 Cal.App.3d 49, 53.) "In 1984, the Legislature amended the statement of purpose found in section 202 of the Welfare and Institutions Code. *It now recognizes punishment as a rehabilitative tool* and emphasizes the protection and safety of the public.[5]

---

**4** This is the showing required for the most restrictive disposition available in the juvenile justice system, viz., commitment to the Department of Corrections and Rehabilitation, Division of Juvenile Facilities (DJF), formerly known as the California Youth Authority (CYA). In our view, and as the parties agree, the same showing is required for a commitment to the Youth Facility.

**5** Section 202 provides in relevant part: "Minors under the jurisdiction of the juvenile court as a consequence of delinquent conduct shall, in conformity with the interests of public safety and protection, receive care, treatment, and guidance that is consistent with their best interest, that holds them accountable for their behavior, and that is appropriate for their circumstances. *This guidance may include punishment that is consistent with the rehabilitative objectives of this chapter*." (§ 202, subd. (b), italics added.)

6

[Citation.] The significance of this change in emphasis is that when we assess the record in light of the purposes of the Juvenile Court Law [citation] we evaluate the exercise of discretion with punishment and public safety and protection in mind." (*Id*. at pp. 57-58, fn. omitted (italics added); accord, *Asean D.*, *supra*, 14 Cal.App.4th at p. 473 ["the 1984 amendments to the juvenile court law reflected an increased emphasis on punishment as a tool of rehabilitation, and a concern for the safety of the public"].) And while the Juvenile Court Law contemplates a progressively restrictive and punitive series of dispositions, there is no absolute rule that the court may not impose a particular commitment until less restrictive placements have actually been attempted. (*Asean D.*, at p. 473; *Teofilio A.*, *supra*, 210 Cal.App.3d at p. 577.)

When we consider the current purposes of the Juvenile Court Law, we conclude the court did not abuse its discretion in committing appellant to the Youth Facility. At least three factors support the conclusion that a disposition less restrictive than confinement in the Youth Facility for one year would be inappropriate because any such disposition would not be adequate to hold appellant accountable for his actions and/or provide for the safety and protection of the public. First, appellant stands adjudicated of a serious offense. (*In re Samuel B.* (1986) 184 Cal.App.3d 1100, 1104, overruled on other grounds in *People v. Hernandez* (1988) 46 Cal.3d 194, 206, footnote 14 [in determining disposition of juvenile offender, "gravity of the offense is always a consideration with other factors"]; § 725.5 [factors to consider in determining appropriate disposition include "the circumstances and gravity of the offense committed by the minor"].) Second, appellant admitted to the probation officer that he was an associate of a criminal street gang, he recently got a gang-related tattoo and he had received disciplinary referrals at school for fighting and gang affiliation. (Cf. *In re John H.* (1978) 21 Cal.3d 18, 27 [CYA commitment upheld based in part on minor's gang involvement]; *In re Sergio R.* (1991) 228 Cal.App.3d 588, 602-603 [same].) Third, drug and alcohol

7

use by minors presents a danger to the public, and appellant admitted drinking alcohol one to two times per month and using marijuana one to two times per week, he was found in possession of marijuana on school grounds and on a separate occasion he was caught smoking marijuana at school.

Substantial evidence also supports the conclusion that commitment to the Youth Facility would be of probable benefit to appellant. There was ample evidence that appellant was in need of services to address his substance abuse, behavioral and academic performance problems. The court reasonably could credit the probation officer's statements in the RPO that the programs and structured environment of the Youth Facility could help appellant in addressing these problems. Moreover, as demonstrated above, the Juvenile Court Law specifically acknowledges that punishment can aid in a minor's rehabilitation by holding him or her accountable.

Appellant's arguments summarized above establish, at most, that a less restrictive placement could provide some benefit to appellant and that some factors militate against commitment to the Youth Facility. However, these arguments ignore that the juvenile court was bound to consider not only appellant's interests, but the interests of society, and give too little weight to the fact that under the Juvenile Court Law, his interests include being held accountable for his actions. In *In re Reynaldo R.* (1978) 86 Cal.App.3d 250, 256 this court held that the juvenile court did not abuse its discretion in committing the minor to CYA, stating, "The minor's record, although justifying a less restrictive disposition, was sufficient for a finding of probable benefit to the minor by a Youth Authority commitment." In the instant case, even if appellant could have derived some benefit from a less restrictive alternative disposition, there was, as demonstrated above, substantial evidence supporting the Youth Facility commitment.

Appellant also challenges the finding the court made at the disposition hearing that "[Appellant's] parent or guardian has failed to provide or neglected to provide or is

8

incapable of providing proper maintenance, training, and education for [appellant]."[6] Representative of the various points he makes in support of this claim are the following: prior to the instant offense he "had not been involved in any behavior that would amount to a crime or suggest that he was capable of committing such an offense," he "was not a discipline problem in the home," and "had never been in trouble before .…" These matters notwithstanding, however, the record also shows that appellant committed a robbery, was involved with a criminal street gang, and regularly used marijuana. These factors provide ample support for this challenged finding.

Appellant also notes that the court found at the disposition hearing that "Reasonable efforts to prevent or eliminate the need for removal have been made," and challenges this finding on the grounds that he had never been on probation before and "had never been referred to the probation department for any criminal related conduct," and thus there was "absolutely no evidence ... that any efforts by the probation department or the court to prevent or eliminate the so-called need to remove [appellant] from the care and custody of his parents."

It is not clear why the court made this finding. The court did not do so, as appellant asserts, pursuant to section 726, which makes no mention of any sort of a "reasonable efforts" prerequisite to the removal of a minor from the custody of his parents. Indeed, although various California Rules of Court and statutes in the Welfare

---

**6** As appellant states, the court made this finding pursuant to section 726, which provides in relevant part: "(a) In all cases in which a minor is adjudged a ward or dependent child of the court, … no ward or dependent child shall be taken from the physical custody of a parent or guardian, unless upon the hearing the court finds one of the following facts: [¶] (1) That the parent or guardian is incapable of providing or has failed or neglected to provide proper maintenance, training, and education for the minor. [¶] (2) That the minor has been tried on probation while in custody and has failed to reform. [¶] (3) That the welfare of the minor requires that custody be taken from the minor's parent or guardian."

and Institutions Code contain references to "reasonable efforts" to "prevent or eliminate the need for removal of the minor from the home," none have any bearing on the instant case.[7]  Moreover, as indicated earlier, there is no absolute rule that the court may not impose a particular commitment until less restrictive placements have actually been attempted.  (*Asean D.*, *supra*, 14 Cal.App.4th at p. 473; *Teofilio A.*, *supra*, 210 Cal.App.3d at p. 577.)  The court's "reasonable efforts" finding, whether supported or not, is simply of no significance here.  As demonstrated above, substantial evidence supports the juvenile court's commitment order.  The court did not abuse its discretion.

## DISPOSITION

The orders appealed from are affirmed.

---

[7]    See, for example, the following:  section 636, subd. (c)(2) [requiring documentation of such efforts by probation officer recommending detention following, inter alia, a ward's violation of a court order or escape from commitment]; California Rules of Court, rule 5.760(b)(7) [at detention hearing, court must consider report of probation officer which must contain documentation of "reasonable efforts were made to prevent or eliminate the need for removal of the child from the home" where probation officer has reason to believe child is at risk of entering foster care placement]; and section 361, subd. (d) [requiring finding of such efforts at certain stage of dependency proceedings].