Filed 10/10/13  In re Javier G. CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re JAVIER G., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>                v.<br><br>JAVIER G.,<br><br>        Defendant and Appellant. | F066716<br><br>(Super. Ct. No. JJD064115)<br><br>**OPINION** |

## THE COURT*

APPEAL from a judgment of the Superior Court of Tulare County.  Hugo J. Loza, Temporary Judge.†

R. Randall Riccardo, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and J. Robert Jibson, Deputy Attorneys General, for Plaintiff and Respondent.

---

*Before Levy, Acting P.J., Kane, J. and Detjen, J.

†Pursuant to California Constitution, article VI, section 21.

# INTRODUCTION

On appeal following adjudication of a Welfare and Institutions Code[1] section 602, subdivision (a) petition, Javier G. contends the juvenile court erred in denying his motion to dismiss counts 7 (petty theft) and 8 (vandalism) "because there was insubstantial evidence" in support of those counts. He also contends the evidence was legally insufficient to support the juvenile court's finding that he committed the crimes of theft and vandalism. Lastly, Javier argues the juvenile court abused its discretion in committing him to a youth facility for 365 days because it relied upon "non-existent factors" in doing so. We will affirm.

## PROCEDURAL BACKGROUND[2]

In a third amended juvenile petition filed August 30, 2012, the Tulare County District Attorney alleged Javier committed the following violations: battery (Pen. Code, § 242, count 1); public intoxication (*id.*, § 647, subd. (f), counts 2, 4 & 6); resisting an officer (*id.*, § 148, subd. (a)(1), count 3); possession of alcohol by a minor (Bus. & Prof. Code, § 25662, subd. (a), count 5); petty theft (Pen. Code, § 484, subd. (a), count 7); vandalism (*id.*, § 594, subd. (a), counts 8 & 10); and trespass (*id.*, § 602, subd. (m), count 9). Javier denied all allegations.

When Javier failed to appear at the jurisdictional hearing set for December 3, 2012, a bench warrant was issued.

Following Javier's subsequent detention, a contested hearing was held January 11, 2013. The court found true the allegations in counts 1 through 3, and 6 through 10. It

---

[1]All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2]A first petition alleging one count of vandalism was filed August 6, 2009. Javier was placed on informal probation. The petition was dismissed March 1, 2010, because he complied with the terms and conditions of that probation. A second petition was filed November 17, 2011, alleging eight counts of vandalism. Those allegations were found true. At the April 5, 2012, disposition hearing, Javier was to remain in his parents' home, pay restitution, and obey all terms and conditions of formal probation.

found the allegation in count 4 not true.  Following a section 701.1 motion by defense counsel, the court granted the motion to dismiss as to count 5, but denied it as to counts 7 and 8.

Thereafter, at disposition on January 28, 2013, the court determined the maximum period of confinement to be four years eight months.  It ordered that Javier be committed to the Tulare County Youth Facility for a period of 365 days.  The court also ordered that, inter alia, Javier participate in alcohol and other drug counseling.  This appeal followed.

## SUMMARY OF FACTUAL BACKGROUND[3]

### *April 13, 2012 Incident (Count 3)*

At 10:10 p.m. on April 13, 2012, City of Lindsay police officer Andrew Robinson was on patrol in a marked police vehicle.  The officer observed two juveniles walking near the intersection of Honolulu Street and Gale Hill Avenue past the municipal curfew.  He recognized one of the juveniles as Javier.  He pulled over and asked them to approach; neither complied.  Instead, they continued walking, pulling things from their pockets and dropping them to the ground.

In an effort to stop them, Officer Robinson grabbed Javier by his right arm.  Javier responded by swinging at the officer.  He did not comply with the officer's request to stop.  Because Javier was aggressive, the officer grabbed him from behind and pinned him against the patrol car and called for backup.  He could smell a strong odor of alcohol on Javier's person and breath.  Based upon his observations, the officer believed Javier to be intoxicated.

Javier tried to run and was taken to the ground.  He used profanity and continued to resist while on the ground, flailing his head about.  Once other officers arrived, Javier was placed in handcuffs.

---

[3]The facts are limited to those of the third juvenile petition.  To the degree the facts arising from the first and second petitions are relevant to this proceeding, they will be addressed in the discussion.

*April 14, 2012 Incident (Counts 1 & 2)*

Officer Robinson was on duty at 9:10 p.m. on April 14, 2012.  He was dispatched to a disturbance at the Veterans Memorial Building in Lindsay.

Initially, Officer Robinson was contacted about another minor being detained for underage drinking and possession of alcohol.  However, he heard others in attendance say a fight was going to happen inside the hall.  Robinson sent Officer Silva inside the hall to investigate.  Silva returned with Javier.  Javier was very angry and was attempting to pull away from Officer Silva.  He called both officers "fucking pussies" and continued to be uncooperative.  Robinson directed Silva to transport Javier to the police department.

Later, Silva requested Robinson's assistance with removing Javier from the patrol car at the department.  When Robinson told Javier to calm down, Javier replied "Fuck you, you fucking bitches."  He continued to use profanity and tried to pull away from the officers.  He also threatened to assault both officers.  Javier was uncooperative and would not comply with directives; ultimately, he was restrained forcefully and handcuffed.  Even then he continued to shout profanities and took a swing at Officer Robinson.

As Robinson patted down Javier, he could smell a strong odor of alcohol.  His eyes were bloodshot, red and watery, and his speech was slightly slurred.  It was obvious to the officer that Javier was quite intoxicated.

Triple A Security guard Jennifer Shields observed Javier drinking a beer earlier that evening.  When she asked him for identification, he threw a nearly full beer can at her; it hit her in the stomach and soiled her uniform.  Javier then walked toward Shields and shoved her with his right shoulder, striking her right arm.  He was very aggressive and used profanity during the incident.  Shields' senior officer addressed Javier about the earlier incident, but he was not asked to leave at that time.

*May 5, 2012 Incident (Count 4)*

About 11:48 p.m. on May 5, 2012, Tulare County deputy sheriff Brandee Robinson responded to a dispatch regarding a possible theft or vehicle burglary at a residence in Lindsay.  A party was taking place and about 50 or more adults and juveniles

4.

were in attendance. Alcohol was being served at the party. Although her investigation revealed no evidence of vehicle burglary or forced entry into any vehicle, Javier came to the deputy's attention. He had alcohol on his breath and the odor of alcohol on his person. His eyes were red and watery, his speech was slurred, and he was unsteady on his feet.

When Deputy Robinson asked Javier whether he had had anything to drink, Javier replied that he did not drink and he had not had anything to drink. Nevertheless, the deputy believed Javier was under the influence of alcohol and presented a danger to himself and others. Javier was arrested for public intoxication.

### May 27, 2012 Incident (Counts 5 & 6)

On May 27, 2012, at 12:43 a.m., while on patrol near Washington School in Lindsay, Officer Robinson observed three subjects, one of whom was carrying a backpack, walking across the school parking lot. Officer Robinson recognized one of the subjects as Javier. As the officer approached them in his patrol car, one of the subjects dropped the backpack to the ground. Although the officer ordered the subjects to stop, they continued walking. He advised them he would release a canine if they did not stop. After dropping other items to the ground, they stopped.

The juveniles were ordered to lie on the ground, and once backup arrived, they were handcuffed. Officer Robinson noted Javier was intoxicated; his eyes were bloodshot and watery, his speech was slurred, and his breath held the odor of alcohol. The other two were also intoxicated. Marijuana, a pipe, several knives, a set of keys, and a lighter were found nearby. Officer Robinson did not see which of the three individuals dropped the backpack that was carrying 19 cans of Bud Light beer.

Later, at the police station, Javier advised Robinson he was so intoxicated that he was going to throw up. He was given a trash can and he vomited into the trash can.

### June 17, 2012 Incident (Counts 7 & 8)

At 10:05 p.m. on June 17, 2012, Officer Robinson was dispatched to a residence on East Samoa Street in Lindsay following the report of a theft from a vehicle. Robinson

made contact with victim Simitrio Meza. Meza advised that an unknown suspect stole the faceplate from his vehicle's stereo. Based upon Meza's initial report of the theft to police, a be-on-the-lookout described the possible suspect as a Hispanic male wearing a white T-shirt on his head.

Shortly thereafter, within five minutes or less, Officer Alcantar with the Lindsay Police Department responded to the area, having detained Javier. Javier had a white T-shirt with him, although he was not wearing it at the time.

Alcantar handed Robinson an Xtreme Sound stereo faceplate; Meza identified the faceplate as his. There were no other suspects.

Meza explained he had been lying in bed about 10:00 p.m. when a neighbor advised him someone was trying to steal something from his 1995 Hyundai Sonata. Meza called the police immediately.

Earlier that afternoon, Meza had parked his car under a tree next to the house. A window was cracked open at the top and he initially believed the car had been locked.[4] Meza indicated the stereo and dashboard were in working order when he parked the car next to his home earlier that afternoon. He had not given anyone permission to use or take any item from his car. While waiting for the police, Meza noticed the stereo's faceplate was missing and the dashboard area near the stereo was damaged. Additionally, the hazard lights on the vehicle were flashing.

When an officer arrived with the person believed to have stolen his stereo's faceplate, Meza initially testified he thought the faceplate had been taken from the suspect's pants pocket. However, later he indicated he was uncertain about whether the faceplate was in the suspect's possession or whether the officer had possession of it.

After the break-in, the stereo was broken and the dashboard was torn up. No repairs had been made; Meza estimated the damage to his vehicle to be about $300.

_____
[4]On cross-examination, Meza explained he had told the officer the car was unlocked because one of the keys to the vehicle had broken off. Although he had a replacement key made, that key only worked on the ignition.

*August 22, 2012 Incident (Counts 9 & 10)*

Lindsay police officer Andrew Loftin was on patrol at 6:27 p.m. on August 22, 2012, when he was dispatched following a report of several subjects inside a vacant house. After checking the front and side areas of the home, he proceeded to the backyard where he observed an open door. As he approached the door he could hear voices and smell burnt marijuana. The door looked as though it had been forced open and there was damage to the doorjamb.

While waiting for backup to arrive, Officer Loftin announced his presence loudly; no one responded. Once the other officers arrived, they began clearing the home. Eventually they proceeded to an upstairs bedroom and bathroom area where they observed four individuals. Javier was one of those individuals. The suspects were ordered to lie down and the scene was secured. Marijuana and smoking devices were found.

Property owner Jeff Munter testified that while the home had been vacant for some time, and a previous trespass had occurred, he had locked and secured the back door of the home on his previous visit. While some damage had been done to the door and doorframe previously, after this particular incident, the damage was greater.

Additionally, a shower had been left running and the shower handle was in pieces. As a result, Munter also later discovered the carpet in that bathroom had suffered water damage. Graffiti was found on two walls upstairs, but that could have been inflicted by the previous trespasser or trespassers.

## DISCUSSION

### 1. The Section 701.1 Motion to Dismiss Counts 7 and 8

Javier contends the juvenile court erred when it denied his motion to dismiss counts 7 and 8 because the evidence regarding those counts is not substantial. The People assert otherwise.

## A. Applicable Legal Standards

Section 701.1 authorizes the juvenile court, upon the minor's motion, to dismiss a wardship petition "after the presentation of evidence on behalf of the petitioner has been closed, if the court, upon weighing the evidence then before it, finds that the minor is not a person described by section 601 or 602." (§ 701.1.) Section 701.1 "is substantially similar to Penal Code Section 1118 governing motions to acquit in criminal trials …. [¶] Thus, the requirement in a criminal case that on a motion for acquittal the trial court is required 'to weigh the evidence, evaluate the credibility of witnesses, and determine that the case against the defendant is "proved beyond a reasonable doubt before [the defendant] is required to put on a defense"' applies equally well to motions to dismiss brought in juvenile proceedings. [Citation.]" (*In re Anthony J.* (2004) 117 Cal.App.4th 718, 727, fn. omitted.)

> "[T]he standard for review of the juvenile court's denial of a motion to dismiss is whether there is substantial evidence to support the offense charged in the petition. [Citation.] In applying the substantial evidence rule, we must 'assume in favor of [the court's] order the existence of every fact from which the [court] could have reasonably deduced from the evidence whether the offense charged was committed and if it was perpetrated by the person or persons accused of the offense. [Citations.] Accordingly, we may not set aside the trial court's denial of the motion on the ground of the insufficiency of the evidence unless it clearly appears that upon no hypothesis whatsoever is there sufficient substantial evidence to support the conclusion reached by the court below.' [Citations.]" (*In re Man J.* (1983) 149 Cal.App.3d 475, 482.)

"'[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citations.]" (*People v. Lewis* (2009) 46 Cal.4th 1255, 1289–1290.)

"Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence." (*In re Michael D.* (2002) 100 Cal.App.4th 115, 126.) "'[W]hile substantial evidence may consist of inferences, such inferences must be "a product of logic and reason" and "must rest on the evidence" [citation]; inferences that

8.

are the result of mere speculation or conjecture cannot support a finding [citations.]'" (*In re Savannah M*. (2005) 131 Cal.App.4th 1387, 1393-1394, italics omitted.) "Evidence which merely raises a strong suspicion of the defendant's guilt is not sufficient to support a conviction." (*People v. Redmond* (1969) 71 Cal.2d 745, 755.)

### B. Analysis

Javier contends the juvenile court erred by denying his motion to dismiss counts 7 and 8 because there is insufficient evidence that he committed the crimes of theft and vandalism.

Penal Code section 484, subdivision (a), provides in relevant part: "Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another … is guilty of theft." Penal Code section 594, subdivision (a) provides that any person who maliciously commits damage to the personal property of another is guilty of vandalism. Thus, the People were required to prove that Javier stole Meza's stereo faceplate from Meza's vehicle, and that Javier was the cause of the damage to Meza's vehicle's dashboard.

The evidence established that when Meza parked his car under a tree near his home on the afternoon of June 17, 2012, the vehicle's stereo system was operable and the dashboard was undamaged. It also established that Meza's neighbor advised him at about 10:00 p.m. that someone was breaking into his car. Meza immediately called 911 and reported the crime, including a description of the suspect. Very shortly thereafter, Officer Alcantar arrived on the scene with Javier in tow. Javier was a Hispanic male in possession of a white T-shirt; the suspect was described as a Hispanic male wearing a white T-shirt on his head. Even assuming Officer Alcantar handed Officer Robinson Meza's stereo faceplate—because it was not on Javier's person when he was returned to the scene—the fact finder's inference, that Javier stole Meza's stereo faceplate and damaged the vehicle's dashboard in the process, is the product of logic and reason and rests upon the evidence admitted. (*In re Savannah M.*, *supra*, 131 Cal.App.4th at pp. 1393-1394.)

The lack of direct evidence that Javier possessed Meza's stereo faceplate is not a bar to a finding of guilt. "'"'"Circumstantial evidence may be sufficient to connect a defendant with the crime and to prove his guilt beyond a reasonable doubt.'"'"'" (*People v. Howard* (2010) 51 Cal.4th 15, 34.) Here, the reasonable inferences relied upon by the juvenile court are not based on suspicion alone, nor "'"on imagination, speculation, supposition, surmise, conjecture, or guess work.'"'" (*People v. Morris* (1988) 46 Cal.3d 1, 21, disapproved on an unrelated point in *In re Sassounian* (1995) 9 Cal.4th 535, 543, fn. 5.) Contrary to Javier's claim, the inferences relied upon by the juvenile court, although circumstantial, are reasonably drawn from the evidence. Javier was located near the scene of the theft within a very short time of the call to 911. He matched the description of the suspect. The officer who located Javier returned to the scene with Javier and the missing stereo faceplate. Reasonable inferences support the true findings regarding theft and vandalism.

Javier contends the juvenile court impermissibly shifted the burden of proof to him in making the following findings in consideration of his motion:

> "With respect to [counts] 7 and 8, we have a situation here that it's primarily circumstantial evidence. We have a situation where the police officer detained an individual shortly after the call is made to the police, he was arrested in close proximity to where this vehicle was vandalized and property taken therefrom. The officer who detained this minor brings the minor back to the scene. The minor is the only person that he brings back to the scene. The officer is—either the officer is in possession of this faceplate or the minor is in possession of this item in his pocket. The witness could not say one way or the other what was the case. But it's clear that at the scene this minor was arrested close—in close proximity and close in time to this offense, and he—when he and the property that was specifically taken from this vehicle are presented, the victim identifies that property as his.

> "So I think all the circumstantial evidence points to the fact that this minor is the only person that could have committed this crime. There is absolutely no circumstantial evidence that points to the possibility that somebody else may have committed this crime. And so when the Court is presented with circumstantial evidence, if there is no logical explanation or some other explanation other than the evidence pointing towards the minor,

the Court must accept the one that points to the minor.  And there's absolutely no evidence in this case that indicates that anyone other than this minor could have committed this crime.  [¶] So the motion is denied with respect to Counts 7 and 8."

We agree with the People that the court was merely providing its interpretation of the evidence before it.  The court's comment was not intended to, nor did it, impermissibly shift the burden to Javier.

Viewed in the light most favorable to the prosecution, our review reveals the juvenile court properly found the essential elements of the crimes of theft and vandalism beyond a reasonable doubt, after weighing the evidence and evaluating witness credibility.  (*In re Anthony J.*, *supra*, 117 Cal.App.4th at p. 727; *In re Man J.*, *supra*, 149 Cal.App.3d at p. 482.)  Therefore, the juvenile court did not err in denying Javier's motion to dismiss counts 7 and 8.

**2.      The Sufficiency of the Evidence Regarding Counts 7 and 8**

In a related argument, Javier claims the evidence regarding counts 7 and 8 is insufficient to support his conviction for those crimes.  The People disagree.

> "As a preliminary matter, we note that on this appeal challenging the sufficiency of the evidence to support a juvenile court judgment sustaining the criminal allegations of a petition made under the provisions of section 602 …, we must apply the same standard of review applicable to any claim by a criminal defendant challenging the sufficiency of the evidence to support a judgment of conviction on appeal.  Under this standard, the critical inquiry is 'whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'  (*Jackson v. Virginia* (1979) 443 U.S. 307, 318–319.)  An appellate court 'must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.'  (*People v. Johnson* (1980) 26 Cal.3d 557, 578; see also *People v. Jones* (1990) 51 Cal.3d 294, 314.)"  (*In re Ryan N.* (2001) 92 Cal.App.4th 1359, 1371.)

"'It is axiomatic that an appellate court defers to the trier of fact on such determinations, and has no power to judge the effect or value of, or to weigh the

11.

evidence; to consider the credibility of witnesses; or to resolve conflicts in, or make inferences or deductions from the evidence. We review a cold record and, unlike a trial court, have no opportunity to observe the appearance and demeanor of the witnesses. [Citation.] "Issues of fact and credibility are questions for the trial court." [Citations.] It is not an appellate court's function, in short, to redetermine the facts.'" (*In re S.A.* (2010) 182 Cal.App.4th 1128, 1140, quoting *In re Sheila B*. (1993) 19 Cal.App.4th 187, 199-200.)

> "The standard of appellate review is the same when the evidence of guilt is primarily circumstantial. 'Although it is the duty of the [finder of fact] to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the [finder of fact], not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt. "'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment.'"' [Citations.]" (*People v. Holt* (1997) 15 Cal.4th 619, 668.)

Here, in stating its ruling after the presentation of evidence and argument, the juvenile court found as follows:

> "Counts 7 and 8, the Court is gonna find those allegations true, as well. The Court previously has made reference to that. In my view, there is—it's primarily based on the circumstantial evidence. All the—the only circumstantial evidence presented points to the minor's guilt. There is absolutely no evidence that points to his innocence. So when you combine all the totality of the circumstances, clearly, it points to this minor being the person who committed the vandalism and the theft of the property. So the Court finds Counts 7 and 8 true."

The juvenile court, as trier of fact, acknowledged the evidence was circumstantial. Yet, it determined that evidence was not susceptible to two interpretations. Further, in its view, the only interpretation of the circumstantial evidence supported Javier's guilt.

As discussed above, the evidence established that when Meza parked his car under a tree near his home on the afternoon of June 17, 2012, the vehicle's stereo system was operable and the dashboard was undamaged. The evidence also revealed that about 10:00 o'clock that evening Meza's neighbor told him someone was breaking into his car. Meza

12.

called 911 and reported the crime. His report included a description of the suspect, to wit: a Hispanic male wearing a white T-shirt on his head. Officer Robinson responded to the dispatch that followed Meza's call; the officer met Meza at his home. Meanwhile, a be-on-the-lookout provided a suspect description. About five minutes later, Officer Alcantar arrived at the Meza residence with Javier in his custody. As a Hispanic male in possession of a white T-shirt, in close proximity to the scene of the theft, Javier matched the description of the suspect. Whether the stereo faceplate was in Javier's possession or the officer's possession was in dispute.

Even assuming Officer Alcantar had possession of the stereo faceplate during the duration of the encounter at the Meza residence, the fact finder's inference that Javier stole Meza's stereo faceplate and damaged the vehicle's dashboard in the process was reasonable. Javier is essentially asking us to make different inferences or deductions from the evidence. He alleges that he or Officer Alcantar could have found the stereo faceplate lying on the ground. However, it is not this court's role to redetermine the facts where contrary inferences might be drawn in favor of Javier's innocence. (*People v. Holt*, *supra*, 15 Cal.4th at p. 668.)

In sum, the evidence here is reasonable, credible and of a solid value, such that a reasonable trier of fact could find Javier guilty beyond a reasonable doubt. (*In re Ryan N.*, *supra*, 92 Cal.App.4th at p. 1371.) The inferences drawn from the circumstantial evidence regarding Javier's possession of the stereo faceplate and his having damaged the dashboard during its removal from Meza's vehicle are reasonable and logical. Therefore, viewing the evidence in the light most favorable to the prosecution, we find Javier's convictions for petty theft and vandalism are supported by sufficient evidence.

3.    **The Juvenile Court's Finding Regarding Javier's Commitment to a Youth Facility**

Javier argues the juvenile court abused its discretion by committing him to the youth facility. More particularly, he argues the court should have sentenced him to less restrictive conditions, namely, an ankle monitor and outpatient alcohol counseling. He

also contends the juvenile court's order does not adequately provide for alcohol counseling despite the court's obvious concerns about his drinking.  Finally, Javier complains the court misstated certain facts and mischaracterized others.

An appellate court may reverse a juvenile court's commitment order only upon a showing the juvenile court abused its discretion.  (*In re Robert H*. (2002) 96 Cal.App.4th 1317, 1329–1330 (*Robert H.*).)  As long as the evidence demonstrates the minor will benefit from the commitment and that less restrictive alternatives would be ineffective, a particular commitment order does not constitute an abuse of discretion.  (See *In re Pedro M*. (2000) 81 Cal.App.4th 550, 555-556, disapproved on another ground in *People v. Gonzales* (2013) 56 Cal.4th 353, 375, fn. 6.)  Moreover, the juvenile court has full discretion in evaluating the credibility of the minor, the probation officer recommendations, and other information presented during the proceedings.  (*Robert H.*, *supra*, at p. 1329.)  Thus, while the juvenile court law contemplates a progressively restrictive and punitive series of dispositions, no absolute rule requires the juvenile court attempt a less restrictive placement before ordering a particular commitment.  (§ 202, subd. (e); *In re Teofilio A*. (1989) 210 Cal.App.3d 571, 577 (*Teofilio A.*).)

When reviewing the record, the appellate court grants all reasonable inferences in support of the juvenile court's decision and does not disturb findings supported by substantial evidence.  (*Robert H.*, *supra*, 96 Cal.App.4th at p. 1330.)  To determine if substantial evidence exists, the appellate court examines the record in light of the purposes of the juvenile court law, which include protecting the public and minor, preserving the minor's family ties, and removing the minor from his or her family only when necessary for the minor's welfare or the public's safety.  (§ 202, subd. (a); *In re Lorenza M*. (1989) 212 Cal.App.3d 49, 53.)

In addition, section 202 provides that minors in delinquency proceedings shall receive care, treatment, and guidance that is consistent with their best interests, holds them accountable for their behavior, and is appropriate given the circumstances.  (§ 202,

14.

subd. (b).)  Thus, the statute recognizes both punishment and rehabilitation as important tools and objectives.  (*Teofilio A.*, *supra*, 210 Cal.App.3d at p. 576.)

In ordering disposition, the juvenile court must broadly consider the minor's age, the circumstances and gravity of the offense, the minor's delinquent history, and any other relevant information.  (§ 725.5; *Robert H.*, *supra*, 96 Cal.App.4th at p. 1329.)  The juvenile court need not specifically discuss each factor during the proceedings, and a record that indicates the court merely considered each factor is sufficient.  (*In re John F.* (1983) 150 Cal.App.3d 182, 185.)

Here, in making its commitment finding, the juvenile court stated as follows:

> "THE COURT:  Okay.  Well in fact this, I heard both trials, the current one and the one that he's on probation for and there is a real common thread to all this.  The previous case he was charged with eight counts of vandalism and I do recall the details of that, reviewed that again and basically he was out of control then but he was given a chance to go home then even though the circumstances of the previous case were pretty significant in that he—there was a great deal of damage that was caused through vandalism in that case, we gave him an opportunity to go home and then we heard the testimony in this case as well and I'm going to say I really think he's beyond, he's totally beyond his parents' control.  Almost every one of these cases he's out there past 12 o'clock at night, 2 o'clock in the morning out there drinking in every single one of these instances and there were I think six different incidents in which he was out there getting into fights, drinking, vandalizing property and so forth and every one of these cases he's totally beyond control and he is intoxicated, he's out in some of these cases he's out there as late as 2 o'clock in the morning and so it just seems to me that he is totally beyond his parents' control and the parents either can't or won't supervise him appropriately and so it is, it is a bad situation that I'm extremely concerned about and especially in light of the fact that he was given a chance on the previous case and I read your letter and to be honest with you if this was the first time, that letter would make a lot of sense to me but in light of what happened last time it doesn't make a lot of sense to me because it indicates to me you didn't learn your lesson and, secondly, as the DA points out, you wouldn't have been in custody on this case at all except for the fact that you failed to appear for trial.
>
> "So I look at the entire history of your case, all the various circumstances that brought you before the Court, the fact that you're not doing well in school and so forth, the very aggressive nature of how you

15.

behave when you're out there on the streets drunk, you get in a lot of fights, your behavior with the police when they were arresting you was extremely poor and so I think the recommendation of the probation officer is appropriate because of the fact that you do have an extremely serious problem that needs to be dealt with and your parents need to stop protecting you. In a sense they're not doing you any favors by trying to keep you at home when they either can't or won't supervise you properly so you don't get in trouble and you're only 15 years old but they let you out running around at 2 o'clock in the morning with your friends getting drunk, so I think your entire family needs to make an assessment of the situation that you're not doing well at home and that when you do, when you do return home that things have not changed because I think you have a good family, you have good parents that care about you, but either you won't let them be good parents or they need to be instructed on what needs to be done to monitor you properly.

"So I think the recommendation is clearly appropriate that the Youth Facility is in order. So the Court is going to follow the recommendation of the probation officer. [¶] …[¶]

"The Court finds that the minor is committed to the Youth Facility Program for 365 days with 50 days credit for time served.

"The welfare of the minor requires that physical custody be removed from the parent or guardian. [¶] … [¶]

"Reasonable efforts have been made to prevent or eliminate the need for removal. [¶] … [¶]

"The minor is to participate in all the services as offered by the Youth Facility, including individual, group, and family counseling, *alcohol and drug counseling*, anger management counseling …." (Italics added.)

It is clear on this record that the juvenile court did not abuse its discretion. It considered Javier's age, the circumstances and gravity of the offenses, his delinquency history, and other relevant information. It evaluated the credibility of the minor and made reasonable inferences based upon the evidence. The court was concerned for Javier's safety, and its commitment order provides for the minor's safety, care, and treatment.

With regard to a less restrictive placement, significantly, the court was concerned with the fact that Javier's parents were either unable or unwilling to control his behavior.

16.

Despite the filing of two previous petitions, the latter resulting in a term of probation that included a 9:00 p.m. curfew, all but one of the six incidents giving rise to this third petition happened after curfew. Thus, it was reasonable for the court to conclude Javier's parents were either unwilling or unable to keep him home and out of trouble. The court expressly noted its previous attempt at home placement and formal probation proved unsuccessful. Javier's behavior did not improve; rather, it worsened. In fact, Javier committed the first of ten new offenses only eight days after the court adjudicated the second petition and placed Javier on formal probation. The juvenile court's findings are supported by substantial evidence and we will not disturb them. (*Robert H.*, *supra*, 96 Cal.App.4th at p. 1330; *In re Lorenza M.*, *supra*, 212 Cal.App.3d at p. 53.)

Javier's argument concerning the juvenile court's misstatements about the time at which he committed his offenses misses the mark. The court's concern was plainly that despite the imposition of a curfew—either that imposed by an earlier probation condition or the municipality's curfew—Javier consistently disobeyed curfew. Whether it was actually two o'clock in the morning or not, in five of the six incidents relevant here, Javier was out past curfew.

Javier also takes issue with the court's references to fighting. Yet the record supports the court's references.[5] For example, on April 14, 2012, officers came into contact with Javier at a quinceañera party after hearing from other attendees about a fight inside the hall. On another occasion, Javier assaulted a security guard by throwing a can of beer at her, striking her in the stomach, and shoving her with his shoulder. Finally, Javier has consistently failed to comply with the requests of law enforcement officials and has fought or struggled with them on a number of occasions. As a result, the juvenile court's characterization in this regard is proper.

---

[5]Discipline records from Javier's junior high school indicate he has been disciplined for bullying, "sock[ing] a student in the stomach," truancy, and disrespectful and defiant behavior.

Javier's contention that the court's commitment order did not address alcohol counseling is without merit.  The judge expressly stated the commitment would involve "alcohol and drug counseling."  In speaking directly to the minor, the juvenile court alluded to alcohol counseling as a part of its commitment order involving the youth facility:  "I think you do recognize the fact that you have a serious problem and you just have to work on it … so you need to take this time, this opportunity to go to school, get yourself on track, get yourself clean and hopefully with this period of time when you get out, you will stay clean because you have a serious drinking problem."  Notably too, the People referenced alcohol counseling when they argued in favor of the youth facility commitment recommended by probation:  "[T]he minor said that he would like to do alcohol and drug counseling but in order for him to do these things, being in boot camp he'll be forced to do these things."  The probation report's use of the term or phrase "substance abuse counseling" does not exclude alcohol treatment, as Javier argues.  Instead, substance abuse treatment encompasses alcohol and drugs.  (See, e.g., Kulig, M.D., M.P.H., *Tobacco*, *Alcohol*, *and Other Drugs: The Role of the Pediatrician in Prevention*, *Identification*, *and Management of Substance Abuse* (Mar. 2005) vol. 115, No. 3, Pediatrics 816-821, http://pediatrics.aappublications.org/content/115/3/816.full [substance abuse treatment includes alcohol treatment or counseling].)[6]  As for Javier's passing reference that the commitment order did not consider his diabetes, while the order did not expressly reference the condition, it did provide that the probation officer had authority to obtain medical treatment pursuant to section 739 on Javier's behalf.

Following a third petition that alleged a series of crimes more serious than those alleged in either of the first two juvenile petitions, the court noted Javier's previous home

---

[6]Javier cites us to a reference at Alcoholism.About.com, contending "'when most people talk about substance abuse, they are referring to the use of illegal drugs.'"  The court notes that, preceding the partial quotation provided above, the article states "Substance abuse can simply be defined as a pattern of harmful use of any substance for mood-altering purposes."  Clearly then, substance abuse includes the use of alcohol; thus, treatment for substance abuse would involve treatment for the abuse of alcohol.

placement with supervision had been unsuccessful. The court determined home placement would not be appropriate in light of the new allegations, all of which were committed while Javier was on probation for the previous offenses. The earlier home placement did not curtail Javier's drinking or behavioral issues. (*Teofilio A*, *supra*, 210 Cal.App.3d at p. 577.) Moreover, there is substantial evidence in the record to support the juvenile court's commitment order. (*Robert H.*, *supra*, 96 Cal.App.4th at p. 1330.)

The evidence demonstrates Javier will benefit from a placement at the Tulare County Youth Facility and that a less restrictive placement would have been ineffective. Hence, the juvenile court did not abuse its discretion.

## DISPOSITION

The judgment is affirmed.