[No. D044090. Fourth Dist., Div. One. Feb. 18, 2005.]

In re CHRISTOPHER M., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
CHRISTOPHER M., Defendant and Appellant.

686

## Counsel

Lise M. Breakey, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Quisteen S. Shum and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**NARES, Acting P. J.**—Defendant Christopher M. admitted, and the juvenile court found true, allegations in an amended delinquency petition filed against him under Welfare and Institutions Code[1] section 602 charging that he had committed a robbery and that the offense constituted a hate crime. The court declared Christopher a ward of the court and thereafter placed him on probation subject to numerous conditions, including conditions requiring that "[a]ll records related to the treatment of [Christopher] . . . be made available upon request to the Court and Probation Department by all individuals, agencies and entities that are either paying for or providing health or psychological treatment or assessment services to [Christopher]."

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

Christopher appeals, contending that the court violated his federal constitutional right to privacy and the psychotherapist-patient privilege by ordering, as unnecessary and overbroad conditions of his probation, "sweeping" disclosure of his medical and psychiatric health records. We affirm.

## FACTUAL BACKGROUND[2]

During the afternoon of February 28, 2004, the adult victim in this case, Pablo Monjaraz, was walking home. A car occupied by Christopher, his brother Nicholas, Michael M., Michael F. and Anthony S., all of whom were juveniles, pulled up beside Monjaraz. Nicholas asked Monjaraz if he had change for a $50 bill. When Monjaraz replied he did not, Nicholas and Michael M. exited the car. One of them pointed a gun at Monjaraz, and the other demanded that he give them all of his money. Monjaraz gave them his wallet, which contained $300 in cash. Christopher, who had remained in the car, videotaped the robbery. Nicholas and Michael M. got back into the car, and the five juveniles drove away. Michael M. took $180, and the other juveniles divided the rest of the money among themselves.

When they were interviewed by the police, the juveniles described a series of similar incidents in which they assaulted and/or robbed transients, illegal aliens and a "retarded" man. Christopher videotaped most of the offenses. He told the probation officer he videotaped some of the robberies, but claimed he had not participated in the assaults and robberies. He asserted that Nicholas and Michael M. were the "mastermind[s]" behind the robberies.

## PROCEDURAL BACKGROUND

### A. *Amended Petition*

An amended delinquency petition filed in March 2004 under Welfare and Institutions Code section 602 charged Christopher, who was then 16 years of age, with four felony counts: robbery of Monjaraz (Pen. Code, § 211) (count 1); assault with a deadly weapon on Roberto B. (Pen. Code, § 211) (count 2); attempted robbery of Roberto B. (Pen. Code, §§ 211, 664) (count 3); and possession of a controlled substance, hallucinogenic psilocybin mushrooms (Health & Saf. Code, § 11377, subd. (a)) (count 4). Counts 1 through 3 contained a hate crime sentencing enhancement allegation under Penal Code section 422.75, subdivision (c), charging that Christopher committed each offense because of the victim's race, color, religion, nationality, country of

---

[2] Because the court's true findings were based on Christopher's admissions without an evidentiary hearing, the following summary of the facts, which primarily pertain to count 1 as alleged in the amended petition, is based on the probation officer's report.

origin, ancestry, gender, disability, and sexual orientation, and because he perceived the victim had one or more of those characteristics; and that he voluntarily acted in concert with another person, either personally or by aiding and abetting another person. The amended petition further alleged as to counts 1 and 2 that Christopher committed the offenses against a developmentally disabled person and that he knew or reasonably should have known of the disability, in violation of Penal Code section 667.9, subdivision (a).

### B. *Christopher's Admissions to the Truth of the Allegations in Count 1*

At a settlement conference, Christopher admitted that he had committed the robbery alleged in count 1 and further admitted the truth of the related count 1 hate crime allegation. Based on these admissions, the court sustained the petition as to count 1; dismissed the remaining counts and allegations on the prosecutor's motion; declared Christopher a ward of the court under section 602; and placed his care, custody and control under the supervision of the probation officer.

### C. *Probation Conditions Nos. 45 and 46*

At the disposition hearing, the court followed the recommendations of the probation officer by placing Christopher on probation; committing him to the Breaking Cycles program for a period not to exceed one year, but with a minimum of 240 custodial days; requiring Christopher to complete an assaultive behavior class and participate in a substance abuse treatment and testing program; and requiring Christopher and his parents to participate in both a "program of counseling or treatment" as directed by the probation officers under section 727, subdivision (c),[3] and a "program of counseling or education" as directed by the probation officers under section 729.2.[4]

---

[3] Section 727, subdivision (c) provides: "The juvenile court may direct any and all reasonable orders to the parents and guardians of the minor who is the subject of any proceedings under this chapter as the court deems necessary and proper to carry out subdivisions (a) and (b), including orders to appear before a county financial evaluation officer and orders directing the parents or guardians to ensure the minor's regular school attendance and to make reasonable efforts to obtain appropriate educational services necessary to meet the needs of the minor. [¶] When counseling or other treatment services are ordered for the minor, the parent, guardian, or foster parent shall be ordered to participate in those services, unless participation by the parent, guardian, or foster parent is deemed by the court to be inappropriate or potentially detrimental to the child."

[4] Section 729.2 provides: "If a minor is found to be a person described in Section 601 or 602 and the court does not remove the minor from the physical custody of the parent or guardian, the court as a condition of probation, except in any case in which the court makes a finding and states on the record its reasons that that condition would be inappropriate, shall: [¶] (a) Require the minor to attend a school program approved by the probation officer without absence. [¶] (b) Require the parents or guardian of the minor to participate with the minor in a

Of particular importance to the instant appeal, the probation officer also recommended that the court adopt proposed conditions of probation Nos. 45 and 46 requiring that "all records" relating to Christopher's medical and psychological treatment be made available to the court and the probation officer upon their request. Defense counsel objected to, and moved to strike, these proposed conditions of probation on grounds they were overbroad and unnecessarily infringed on Christopher's right of privacy.

The court disagreed with defense counsel's arguments and denied Christopher's motion to strike conditions of probation Nos. 45 and 46, indicating that "in trying to rehabilitate as opposed to punish" Christopher, the court needed to "have access to this information." Christopher's timely appeal followed.

## DISCUSSION

Christopher contends the court violated his federal constitutional right to privacy and the psychotherapist-patient privilege by ordering, as conditions of his probation, sweeping, unnecessary and overbroad disclosure of his medical and psychiatric health records. We reject these contentions.

### A. *Background*

· The probation officer in this matter recommended that the court adopt proposed conditions of probation Nos. 45 and 46,[5] which together required that "all records" relating to Christopher's medical and psychological treatment be made available to the court and the probation officer upon request.

---

counseling or education program, including, but not limited to, parent education and parenting programs operated by community colleges, school districts, or other appropriate agencies designated by the court or the probation department, unless the minor has been declared a dependent child of the court pursuant to Section 300 or a petition to declare the minor a dependent child of the court pursuant to Section 300 is pending. [¶] (c) Require the minor to be at his or her legal residence between the hours of 10:00 p.m. and 6:00 a.m. unless the minor is accompanied by his or her parent or parents, legal guardian or other adult person having the legal care or custody of the minor."

[5] Specifically, condition of probation No. 45 provides: "*All records related to the treatment of the minor shall be made available upon request to the Court and Probation Department by all individuals, agencies and entities that are either paying for or providing health or psychological treatment or assessment services to the minor.* These individuals, agencies and entities include: hospitals, laboratories, health insurers, health plans, health maintenance organizations, employers, clinics, physicians, psychologists, psychotherapists, counselors and any other individual or entity providing health or psychological treatment or assessment services to the minor." (Italics added.)

Condition of probation No. 46 provides: "The minor's treatment records include, but are not limited to: medical history and physical examination, discharge summaries, progress notes, medication records, drug and alcohol test results, x-rays and their interpretation, laboratory results, dental records, psychiatric records including consultations, physician orders, pharmacy

Defense counsel objected to, and moved to strike, these proposed conditions of probation, claiming they were overbroad, infringed on Christopher's right of privacy, and were not necessary. Defense counsel represented that Christopher's parents, who were present at the hearing, were "shell shocked" by Christopher's behavior, they were at last aware of his substance abuse problem and the "poor choices" he had been making, and the family was "ready to move forward in a positive way."

The court indicated it was going to adopt conditions of probation Nos. 45 and 46 and stated, "I don't know what might happen while he's in custody or otherwise, but some of these would absolutely be essential for ongoing treatment." Defense counsel asked the court to do "as other courts have done" and "strike anything to do with mental health," adding, "I think this obviously works against a minor seeking assistance if they [*sic*] need it."

Urging the court to adopt these probation conditions without modification, the prosecutor advised the court that "[t]hey are in sync with the *federal law*, and I know that there's a lot of work that has gone into fashioning this language. And I know that the assistant presiding judge has researched this issue and has permitted these two items to be on as part of the terms and conditions of probation." (Italics added.) The prosecutor did not identify the "federal law" to which he was referring.[6]

Defense counsel responded by stating, "I don't have a copy of the federal law. My understanding is . . . [that] it's not mandated that the court order this. It's to provide access for funding, and I'm just raising the objection."

---

records, nursing notes, mental health records and alcohol and substance abuse treatment records. Nothing in this order shall violate the attorney-client or attorney work product privileges."

[6] By letter dated December 17, 2004, this court requested that respondent provide in supplemental briefing a discussion of, and citation to, the "federal law" to which the prosecutor referred. In its letter brief, respondent stated in part that "the federal law the prosecutor referenced was the Health Insurance Portability and Accountability Act of 1996 [HIPAA], 104 P.L. 191. Specifically, subtitle F, part C, section 1177, codified in title 42 United States Code section 1320d-6, imposes criminal liability on any health care provider who knowingly and wrongfully discloses private health information to a third party." In his response, Christopher agrees with respondent that federal regulations implementing HIPAA make an exception for disclosure of protected health information in the course of "any judicial or administrative proceeding[]." Specifically, they cite to 45 Code of Federal Regulations part 164.512(e)(1)(i) (2003), which provides in part: "A covered entity may disclose protected health information *in the course of any judicial or administrative proceeding*: [¶] . . . In response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order." (Italics added.) In its letter brief, respondent argues that "[p]robation conditions Nos. 45 and 46 thus enable health care providers to release necessary information without subjecting themselves to criminal prosecution. The conditions also advise health care providers as to the exact scope of the information which they can disclose."

Defense counsel also claimed it was "not in the best interest of minors to tell them that if you go to a mental health person for assistance with something[,] it's going to be released to your probation officer in court. And I don't think that it is helpful in the minor's rehabilitation." Objecting that "[t]his is a blanket order that means that if you want to call Kaiser and get [Christopher's] full file, you can do that," defense counsel also stated that Christopher was willing to "sign a release for things that relate to his court rehabilitation."

The court disagreed with the defense's arguments and denied Christopher's motion to strike conditions of probation Nos. 45 and 46. The court stated that "in trying to rehabilitate as opposed to punish" Christopher, it needed to "have access to this information."

B. *Applicable Legal Principles*

■ The juvenile court is statutorily authorized to place a ward on probation and "impose and require *any and all reasonable conditions* that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced." (§ 730, subd. (b), italics added.)[7] Section 730 grants courts broad discretion in establishing conditions of probation in juvenile cases. (*In re Ronny P.* (2004) 117 Cal.App.4th 1204, 1207 [12 Cal.Rptr.3d 675].) "[T]he power of the juvenile court is even broader than that of a criminal court." (*In re Binh L.* (1992) 5 Cal.App.4th 194, 203 [6 Cal.Rptr.2d 678].) The juvenile court's exercise of discretion in establishing conditions of probation in juvenile cases "will not be disturbed in the absence of manifest abuse." (*In re Josh W.* (1997) 55 Cal.App.4th 1, 5 [63 Cal.Rptr.2d 701].)

■ A juvenile probation condition is generally valid unless it " '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality.' " (*People v. Lent* (1975) 15 Cal.3d 481, 486 [124 Cal.Rptr. 905, 541 P.2d 545], superseded by Prop. 8 as described by *People v. Wheeler* (1992) 4 Cal.4th 284, 290–292 [14 Cal.Rptr.2d 418, 841 P.2d 938]; *In re Binh L. supra,* 5 Cal.App.4th at p. 203.)

_____

[7] Section 730, subdivision (b) provides: "When a ward described in subdivision (a) is placed under the supervision of the probation officer or committed to the care, custody, and control of the probation officer, the court may make any and all reasonable orders for the conduct of the ward including the requirement that the ward go to work and earn money for the support of his or her dependents or to effect reparation and in either case that the ward keep an account of his or her earnings and report the same to the probation officer and apply these earnings as directed by the court. *The court may impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced."* (Italics added.)

■ As explained in *In re Antonio R.* (2000) 78 Cal.App.4th 937, 941 [93 Cal.Rptr.2d 212], "juvenile conditions may be broader than those pertaining to adult offenders. This is because juveniles are deemed to be more in need of guidance and supervision than adults, and because a minor's constitutional rights are more circumscribed. The state, when it asserts jurisdiction over a minor, stands in the shoes of the parents. And a parent may 'curtail a child's exercise of the constitutional rights . . . [because a] parent's own constitutionally protected "liberty" includes the right to "bring up children" [citation,] and to "direct the upbringing and education of children." [Citation.]' [Citations.]" The *Antonio R.* court further explained that even conditions infringing on constitutional rights may not be invalid if they are specifically tailored to fit the needs of the juvenile. (*Ibid.*) In planning the conditions of a juvenile probationer's supervision, the juvenile court must consider both the circumstances of the crime and the juvenile's entire social history. (*In re Binh L., supra,* 5 Cal.App.4th at p. 203.)

C. *Analysis*

1. *Reasonableness of the probation conditions*

Here, an examination of Christopher's criminal record and his social history demonstrates that the probation conditions at issue here are reasonable and tailored to fit his reformative and rehabilitative needs. Respondent argues that Christopher "committed a series of offenses which demonstrated a lack of conscience and deep-seated psychological problems." The record supports this argument. With respect to his current offense, Christopher admitted the allegations in count 1 of the amended delinquency petition that he had committed a robbery and that the offense constituted a hate crime. Christopher and his four juvenile companions drove up to their Hispanic victim, Monjaraz, and Christopher used a video camera to tape-record the crime as two of his friends robbed Monjaraz at gunpoint.

The probation report shows that when they were interviewed by the police, Christopher and the other juveniles involved in the current offense described a series of similar incidents in which they assaulted and/or robbed transients, illegal aliens and a "retarded" man. Christopher videotaped most of the offenses. In one of those incidents, Christopher and his companions drove up to a developmentally disabled man, and two of the juveniles hit the victim in the back with a PVC pipe. Nicholas reported to the police that Christopher had videotaped the crime and had encouraged Nicholas to assault the victim. Christopher told the police that Nicholas and Michael had robbed a "retarded" man before they robbed a "Mexican" (Monjaraz) later that same day.

Christopher admitted to the probation officer that the robberies were videotaped, and he had seen the videos. Christopher tried to minimize his

culpability by telling the probation officer he only videotaped some of the robberies, by denying he participated in any of the assaults and robberies, and by stating he did not receive any of the money taken from the victims.

The probation report also shows that Christopher admitted he had brought hallucinogenic psilocybin mushrooms to school with intent to sell; and he had been a member of the VSM (Varrios San Marcos) street gang and had participated in "gang banging" activities such as stealing beer from delivery trucks and getting into fights with other rival gangs. Claiming he decided to quit the VSM gang, Christopher described himself as a "ruthless person" who lacked empathy for people during the time he was in the gang. He admitted that he had experimented with alcohol, marijuana, Vicodin, and mushrooms; he had previously been charged with possession of a controlled substance; and he was still using alcohol.

Christopher's father informed the probation officer that he had enrolled Christopher in counseling sessions due to his disobedience of "house rules," especially the curfew set for him, but allowed Christopher to stop attending the sessions because he did not like the advice the counselor gave to Christopher and him.

The probation report also shows that in November 2003, prior to his commission of the current offense, Christopher was placed on informal probation after he was charged with possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)), and he signed an informal supervision contract requiring that he complete counseling and participate in a substance abuse program. The probation report shows that Christopher did not complete any of the conditions, and he violated the contract by committing the new offense.

The foregoing record shows that the court's decision to impose conditions of probation Nos. 45 and 46 is reasonably tailored to fit Christopher's reformative and rehabilitative needs, given his demonstrated lack of empathy toward others, his history of gang banging activity and participation in criminal conduct that involved violence against innocent victims, his unwillingness to take full personal responsibility for his antisocial behavior, his substance abuse problems, and his refusal to meaningfully participate in counseling and a substance abuse program as he had promised to do as a condition of a prior grant of probation. The probation conditions at issue here, and the access to Christopher's treatment records they provide, will assist the probation officer and the court to determine whether Christopher is fully complying with the numerous conditions of his new grant of probation, and whether, in the interest of rehabilitation and reformation, treatment is succeeding in helping him to overcome his psychological, behavioral, and substance abuse problems.

## 2. *Constitutional right to privacy*

Christopher contends that conditions of probation Nos. 45 and 46 should be stricken because they violate his federal constitutional right to privacy. We reject this contention.

■ The parties agree that the question of whether the probation conditions at issue here violate Christopher's constitutional right to privacy is governed by the decision in *Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1 [26 Cal.Rptr.2d 834, 865 P.2d 633]. In *Hill*, the California Supreme Court held that to prove a violation of this constitutional guarantee, the complaining party must show (1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) conduct constituting a serious invasion of the privacy interest. (*Id.* at pp. 35–37, 39–40.) The *Hill* court also held, however, that even if these three elements are established, a violation of the right to privacy will not be found where the invasion of the privacy interest is justified because it substantially furthers one or more legitimate competing or countervailing privacy or non-privacy interests. (*Id.* at pp. 37–38, 40.)

■ Here, it is undisputed that Christopher has a privacy interest in his medical and psychological treatment records. However, the state has a legitimate countervailing interest in (1) protecting the public against Christopher's violent and antisocial conduct, and (2) determining both whether he is fully complying with the numerous conditions of his new grant of probation, and whether treatment is succeeding in helping him to gain empathy for others, renounce completely his gang affiliation, and overcome his substance abuse problem. We conclude the court did not violate Christopher's right to privacy by imposing conditions of probation Nos. 45 and 46.

## 3. *Psychotherapist-patient privilege*

■ Equally unavailing is Christopher's contention that conditions of probation Nos. 45 and 46 should be stricken because they violate the psychotherapist-patient privilege. In *In re Kristine W.* (2001) 94 Cal.App.4th 521, 525 [114 Cal.Rptr.2d 369], this court stated: "It is established that the psychotherapist-patient privilege applies to the relationship between a dependent minor and his or her therapist. [Citations.] '[T]he purpose of the privilege is to protect the privacy of a patient's confidential communications to his [or her] psychotherapist. [Citations.]' [Citation.]"

■ Evidence Code section 1012 defines "confidential communication between patient and psychotherapist" as "information, including information obtained by an examination of the patient, transmitted between a patient and

his psychotherapist in the course of that relationship and in confidence by a means [that], so far as the patient is aware, discloses the information to no third persons other than those who are present to further the interest of the patient in the consultation, or *those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the psychotherapist is consulted,* and includes a diagnosis made and the advice given by the psychotherapist in the course of that relationship." (Italics added.) The foregoing italized provision in Evidence Code section 1012 codifies an express exception to the psychotherapist-patient privilege that permits disclosure of otherwise privileged communications between patient and psychotherapist to third persons to whom disclosure is reasonably necessary to accomplish the purpose for which the psychotherapist is consulted. (*In re Pedro M.* (2000) 81 Cal.App.4th 550, 554 [96 Cal.Rptr.2d 839] ["Evidence Code section 1012 itself permits the disclosure of a confidential communication between patient and psychotherapist to 'those to whom disclosure is reasonably necessary for . . . the accomplishment of the purpose for which the psychotherapist is consulted' "].) Quoting *In re Pedro M.,* "this would include the juvenile court, where the patient is a delinquent minor who has been properly directed to participate and cooperate in a [rehabilitative] program in conjunction with a disposition order placing the minor on probation." (*In re Pedro M., supra,* at p. 554.)

Here, by reasonably limiting disclosure of otherwise privileged psychotherapist-patient communications to the probation officer and the court, the court acted under the authority of Evidence Code section 1012 and avoided unnecessary disclosure of those communications. Given this limited scope of disclosure, Christopher's history of antisocial behavior, his participation in crimes of violence against people he perceived as either unable or unwilling to defend themselves, and his demonstrated unwillingness to complete conditions of probation, we hold that the court did not violate the psychotherapist-patient privilege by imposing conditions of probation Nos. 45 and 46. In the event Christopher hereafter claims that specific disclosures of his psychotherapy records to the court and probation officer may jeopardize his rehabilitative progress, the juvenile court in its discretion may review and decide such a claim.

Christopher also complains that the limited scope of disclosure under the subject probation conditions is "meaningless," because "[t]he court 'limited' disclosure to the very entities to whom disclosure is most likely to arouse [his] feelings of distrust and betrayal, thus constituting the most egregious invasion of privacy and frustrating the very purpose of his therapy." The record shows that Christopher, not the court or his probation officer, is responsible for any frustration of the purpose of his therapy, as demonstrated by his refusal to attend counseling sessions and participate in a substance

abuse program as required under a former grant of probation. Given Christopher's criminal record and social history, any feelings of "distrust and betrayal" he may experience cannot be attributed to the imposition of probation conditions that are reasonably tailored to fit his reformative and rehabilitative needs.

## DISPOSITION

The judgment is affirmed.

McDonald, J., and Aaron, J., concurred.

On March 17, 2005, the opinion was modified to read as printed above.