Filed 5/6/15  P. v. Gattis CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H040330 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1359476) |
| v. | |
| SHAUN CHRISTOPHER GATTIS, | |
| Defendant and Appellant. | |

Defendant Shaun Christopher Gattis pleaded no contest to a count of indecent exposure (Pen. Code, § 314, subd. 1).[1]  He was sentenced to eight months in county jail and was placed on three years of formal probation.  On appeal, he challenges the conditions of probation imposed pursuant to section 1203.067 as part of the sex offender management program, which require him to waive his privilege against self-incrimination and to waive his psychotherapist-patient privilege.  He argues these conditions violate the Fifth Amendment, are unconstitutionally overbroad, and are unreasonable.  For the reasons set forth below, we reject his contentions and affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

*The Current and Prior Offense*

The factual circumstances of defendant's offense of indecent exposure (§ 314, subd. 1) are unclear.  There was no preliminary examination and there are no details regarding the offense in the prepared probation report, which only indicates the crime

---

[1] Further unspecified statutory references are to the Penal Code.

occurred on or around June 14, 2013 and involved several minors. A victim's mother stated her daughter was "freaked out" by the situation. Another victim's family stated they no longer felt safe in their neighborhood because of what happened.[2]

Defendant's prior offense occurred approximately three weeks earlier. The nine-year-old victim told her mother that defendant had exposed himself to her while shopping at a Target store. Defendant denied the allegation, stating he had only been "fidgeting" with his clothing.

*The Complaint and Plea*

On June 19, 2013, a complaint was filed charging defendant with one count of indecent exposure (§ 314, subd. 1). It was further alleged that defendant had been previously convicted of indecent exposure in violation of section 314, subdivision 1.

Defendant pleaded no contest to the charge on August 8, 2013, with the agreement that he would be placed on probation with an eight-month county jail sentence.

On September 25, 2013, defendant filed written objections to the proposed probation conditions to be imposed pursuant to section 1203.067, subdivision (b)(3) and (b)(4). Defendant insisted the probation conditions were unconstitutionally vague, overbroad, and unreasonable.[3]

At sentencing, the trial court noted defendant's objections but orally imposed the conditions as follows: "You shall waive any privilege against self-incrimination and participate in polygraph examinations, which shall be part of the sex offender

---

[2] Defendant does not raise any challenges to the court's finding of a factual basis for his plea. Indeed, any such challenge would be barred due to his failure to obtain a certificate of probable cause (§ 1237.5). (See *People v. Panizzon* (1996) 13 Cal.4th 68, 75-76.)

[3] Defendant also objected to the imposition of a probation condition that required him to submit to continuous GPS monitoring. However, he does not challenge this probation condition on appeal.

management program pursuant to Section 1203.067[, subdivision] (b)(3) of the Penal Code.  You shall waive any psychotherapist/patient privilege to enable communication between the sex offender management professional and the probation officer pursuant to Section 1203.067[, subdivision] (b)(4) and Section 290.09 of the Penal Code."  Defendant appealed.

## DISCUSSION

Defendant challenges the probation condition imposed pursuant to section 1203.067, subdivision (b)(3) requiring him to waive his privilege against self-incrimination and participate in polygraph examinations.  He also challenges the probation condition imposed pursuant to section 1203.067, subdivision (b)(4), requiring him to waive his psychotherapist-patient privilege.

Section 1203.067 provides in pertinent part:  "(b) On or after July 1, 2012, the terms of probation for persons placed on formal probation for an offense that requires registration pursuant to Sections 290 to 290.023, inclusive, shall include all of the following:  [¶] . . . [¶] (3) Waiver of any privilege against self-incrimination and participation in polygraph examinations, which shall be part of the sex offender management program. [¶] (4) Waiver of any psychotherapist-patient privilege to enable communication between the sex offender management professional and supervising probation officer, pursuant to Section 290.09."

Our review of facial overbreadth challenges to a probation condition is de novo. (*In re Shaun R*. (2010) 188 Cal.App.4th 1129, 1143.)  "Inherent in the very nature of probation is that probationers 'do not enjoy "the absolute liberty to which every citizen is entitled." ' [Citations.]  Just as other punishments for criminal convictions curtail an offender's freedoms, a court granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens."  (*United States v. Knights* (2001) 534 U.S. 112, 119.)  "[C]onditions infringing on constitutional rights . .

3

. will pass muster if tailored to fit the individual probationer." (*In re Pedro Q.* (1989) 209 Cal.App.3d 1368, 1373.) Thus, "[t]he essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights." (*In re E.O.* (2010) 188 Cal.App.4th 1149, 1153.)

In contrast, when a trial court imposes a probation condition based on its determination of historical or situational facts regarding the defendant or the defendant's crimes, a reviewing court is confined to determining whether imposing the condition amounted to an abuse of discretion. (See *People v. Carbajal* (1995) 10 Cal.4th 1114, 1120-1121.) A trial court may "impose conditions to foster rehabilitation and to protect public safety." (*Id.* at p. 1120.) "A condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality.' " (*People v. Lent* (1975) 15 Cal.3d 481, 486 (*Lent*), superseded on another ground as stated in *People v. Wheeler* (1992) 4 Cal.4th 284, 290-292.) The touchstone is whether the condition is reasonable under all the circumstances. (*People v. Welch* (1993) 5 Cal.4th 228, 234.)

1. **Section 1203.067, subdivision (b)(3)**

First, defendant challenges to the probation condition requiring him to waive his privilege against self-incrimination and participate in polygraph examinations.

4

A. *Fifth Amendment*[4]

Defendant contends the waiver requirement violates his Fifth Amendment privilege against self-incrimination. He claims that "section 1203.067[, subdivision] (b)(3) actually codifies the threat and/or coercion in that the defendant has no choice but to agree to make statements or face the consequence of either not receiving probation or later violating probation. . . . If the prospective probationer refuses to waive his privilege against self-incrimination, he will be denied probation and sentenced to state prison a felony, or county jail on a misdemeanor, or face a violation of probation."

As we explain below, we reject defendant's contentions. A Fifth Amendment violation occurs when a defendant is compelled to make incriminating statements, and these statements are later introduced against the defendant in an ensuing criminal prosecution. The probation condition at issue here does not compel defendant to be a witness against himself. Rather, it requires him to provide truthful answers to questions posed to him by examiners as part of his sex offender management program.

Broadly speaking, "[t]he Fifth Amendment Self-Incrimination Clause, which applies to the States via the Fourteenth Amendment . . . provides that no person 'shall be compelled in any criminal case to be a witness against himself.' The 'Amendment

---

[4] The issue of whether a probation condition imposed pursuant to section 1203.067, subdivision (b)(3) requiring a defendant waive his Fifth Amendment privilege against self-incrimination and participate in polygraph examinations is unconstitutional is currently under review by the California Supreme Court. A panel of this court concluded that the probation condition was not unconstitutional and declined to modify a similarly worded probation condition imposed under section 1203.067, subdivision (b)(3). (*People v. Garcia* (2014) 224 Cal.App.4th 1283, review granted July 16, 2014, S218197.) This court has also decided in three separate cases that the probation condition violates a defendant's Fifth Amendment rights. (*People v. Friday* (2014) 225 Cal.App.4th 8, review granted July 16, 2014, S218288; *People v. Klatt* (2014) 225 Cal.App.4th 906, review granted July 16, 2014, S218755; *People v. Rebulloza* (2015) 234 Cal.App.4th 1065, petition for review pending, petition filed April 3, 2015, S225503.)

5

speaks of compulsion,' . . . and . . . the 'constitutional guarantee is only that the witness not be *compelled* to give self-incriminating testimony.' " (*McKune v. Lile* (2002) 536 U.S. 24, 35-36 (plur. opn. of Kennedy, J.).)

"As a general rule, 'the [Fifth] Amendment speaks of compulsion . . . . If [an individual] desires the protection of the privilege, he must claim it or he will not be considered to have been "compelled" within the meaning of the Amendment.' [Citations.] There are, however, exceptions to this rule. The Court has held that if an individual is subjected to a practice that 'den[ies him] . . . a "free choice to admit, to deny, or to refuse to answer," ' then any statement he makes is considered involuntary and cannot be used in a criminal proceeding. [Citations.] In these cases, the Fifth Amendment is considered 'self-executing,' and an individual does not need to invoke it in order to have his admissions suppressed in an ensuing criminal prosecution. [Citation.] [¶] One instance in which an individual is held to have been denied the free choice to admit, to deny, or to refuse to answer is what the Court refers to as a 'penalty situation.' [Citation.] If an individual's refusal to answer incriminating questions subjects him to a penalty, then the Fifth Amendment is self-executing and any statements made under threat of such penalty are inadmissible." (*U.S. v. Saechao* (9th Cir. 2005) 418 F.3d 1073, 1077, fn. omitted (*Saechao*).)

Defendant's Fifth Amendment argument--that if he refuses to waive his privilege he will be denied probation or be found in violation of probation--is a claim that the challenged condition creates the classic penalty situation as described in *Saechao*, *supra*, 418 F.3d at page 1077.

Defendant relies on *Minnesota v. Murphy* (1984) 465 U.S. 420, 438 (*Murphy*). The defendant in *Murphy* was on probation subject to a condition that he be "truthful with the probation officer 'in all matters.' " (*Id*. at p. 422.) While on probation, he made incriminating statements to the probation officer that he subsequently sought to suppress

6

during his ensuing criminal prosecution, claiming they were obtained in violation of the Fifth Amendment. (*Id*. at p. 425.)

The Supreme Court noted that Murphy's "general obligation to appear and answer questions truthfully" to the probation officer did not convert his "otherwise voluntary statements into compelled ones" under the Fifth Amendment. (*Murphy*, *supra*, 465 U.S. at p. 427.) In short, Murphy's statements could not be categorized as compelled unless he was required to answer despite his invocation of his claim of privilege. (*Ibid*.) However, the general rule that the privilege must be invoked is inapplicable in the classic penalty situation. (*Id*. at p. 434.) The *Murphy* court opined that "[i]n each of the so-called 'penalty' cases, the State not only compelled an individual to appear and testify, but also sought to induce him to forgo the Fifth Amendment privilege by threatening to impose economic or other sanctions 'capable of forcing the self-incrimination which the Amendment forbids.' [Citation.] In most of the cases, the attempt to override the witnesses' privilege proved unsuccessful, and the Court ruled that the State could not constitutionally make good on its prior threat. [Citations.] These cases make clear that 'a State may not impose substantial penalties because a witness elects to exercise his Fifth Amendment right not to give incriminating testimony against himself.' " (*Ibid*.) Furthermore, in situations where a defendant yields to the pressure imposed by the state and gives incriminating information, the defendant has not waived his privilege. (*Id*. at pp. 434-435.)

The Supreme Court reasoned that Murphy had been informed he was required to be truthful to his probation officer "in all matters" and that failure to do so could result in a revocation of probation. (*Murphy*, *supra*, 465 U.S. at p. 436.) However, "[o]n its face, Murphy's probation condition proscribed only false statements; it said nothing about his freedom to decline to answer particular questions and certainly contained no suggestion that his probation was conditional on his waiving his Fifth Amendment privilege with

7

respect to further criminal prosecution." (*Id*. at p. 437.) The court stated that it was "hesitant to read into the truthfulness requirement an additional obligation that Murphy refrain from raising legitimate objections to furnishing information that might lead to his conviction for another crime." (*Ibid*.) Furthermore, there was no direct evidence that Murphy made the incriminating statements fearing that if he failed to do so his probation would be revoked. (*Ibid*.) The statements were therefore admissible against Murphy in a criminal proceeding.

Procedurally, *Murphy* is readily distinguishable. Here, defendant has not made incriminating statements that the state now seeks to introduce in a criminal prosecution; defendant makes a facial challenge to a probation condition requiring him to waive his claim of privilege. Additionally, *Murphy* reasoned that if "the State, either expressly or by implication, asserts that invocation of the privilege would lead to revocation of probation, it would have created the classic penalty situation, the failure to assert the privilege would be excused, and the probationer's answers would be deemed compelled and inadmissible in a criminal prosecution." (*Murphy*, *supra*, 465 U.S. at p. 435.) Indeed, this is nearly the exact scenario raised by condition imposed pursuant to section 1203.067, subdivision (b)(3).

In fact, *Murphy* recognized that "a State may validly insist on answers to even incriminating questions and hence sensibly administer its probation system, as long as it recognizes that the required answers may not be used in a criminal proceeding and thus eliminates the threat of incrimination. Under such circumstances, a probationer's 'right to immunity as a result of his compelled testimony would not be at stake,' [citations], and nothing in the Federal Constitution would prevent a State from revoking probation for a refusal to answer that violated an express condition of probation or from using the probationer's silence as 'one of a number of factors to be considered by the finder of fact'

8

in deciding whether other conditions of probation have been violated." (*Murphy*, *supra*, 465 U.S. at p. 436, fn. 7.)

Applying the reasoning set forth in *Murphy*, defendant's probation condition does not violate the Fifth Amendment. The state has established that invocation of the privilege against self-incrimination would lead to a revocation of probation, triggering the penalty situation discussed in *Saechao* and *Murphy*. Therefore, the state *cannot* use these elicited statements in a criminal proceeding against the defendant. Absent an attempt by the state to introduce an incriminating statement made by defendant against him in a criminal prosecution, no Fifth Amendment violation has occurred.

*Saechao*, also relied on by defendant, is inapposite. In *Saechao*, the probationer was subject to a condition that he truthfully answer all questions posed to him by his probation officer. (*Saechao*, *supra*, 418 F.3d at p. 1075.) A police officer asked Saechao if he had a gun, and he responded affirmatively. Saechao thereafter sought to suppress admission of his statement in his criminal prosecution for being a felon in possession of a firearm. The federal district court granted the motion to suppress, and the Ninth Circuit upheld this decision after concluding the defendant was required to answer *all* inquiries truthfully and admission of the statement would create a classic penalty situation. (*Id*. at pp. 1075-1079.) *Saechao* and *Murphy* both dealt with an issue we are not confronted with here: the admissibility of an incriminating statement in a criminal prosecution.[5]

Defendant, however, cites *State v. Eccles* (Ariz.1994) 179 Ariz. 226. The court in *Eccles* considered the constitutionality of a probation condition requiring a defendant to

---

[5] Many of the cases relied on by defendant involve the admissibility of incriminating statements in a criminal proceeding. (*People v. Quinn* (1964) 61 Cal.2d 551, superseded as stated in *People v. Coffman and Marlow* (2004) 34 Cal.4th 1 [defendant's statements to probation officer deemed inadmissible, because it was made involuntarily]; *People v. Goodner* (1992) 7 Cal.App.4th 1324 [defendant's statements to the probation officer deemed admissible].)

9

"waive any and all rights against [self-incrimination]" as a part of Arizona's sexual offender treatment program. (*Id.* at p. 227.) *Eccles* interpreted the *Murphy* decision as holding that the "state is also prohibited from making waiver of the privilege [against self-incrimination] a term of probation." (*Id.* at p. 228.) The court concluded that "[t]he state may not force defendant to choose between incriminating himself and losing his probationary status by remaining silent. The fact that defendant has not yet been presented with the dilemma of incriminating himself or jeopardizing his probation does not affect our decision. The Supreme Court has held that 'the mandate of the great privilege against self-incrimination does not tolerate the attempt, regardless of its ultimate effectiveness, to coerce a waiver of the immunity it confers on penalty of the loss of employment.' " (*Ibid.*)

If we were to apply the reasoning set forth in *Eccles*, we would conclude defendant's claims have merit. However, we respectfully disagree with *Eccles*. The California Supreme Court recently held in *Maldonado v. Superior Court* (2012) 53 Cal.4th 1112 that "the Fifth Amendment does not directly prohibit the government from *eliciting* self-incriminating disclosures despite the declarant's invocation of the Fifth Amendment privilege. Absent a valid waiver of Fifth Amendment rights, this constitutional provision simply bars the direct or derivative *use* of such officially compelled disclosures to convict or criminally punish the person from whom they were obtained." (*Id.* at p. 1127.) Pursuant to *Maldonado*, simply procuring a potentially incriminating statement from a defendant would not violate the Fifth Amendment.

*Maldonado* relied on the Supreme Court's plurality opinion in *Chavez v. Martinez* (2003) 538 U.S. 760 (*Chavez*) (plur. opn. of Thomas J.). *Chavez* was a federal civil rights action in which the plaintiff, Martinez, made incriminating statements to the defendant police officer without being read his rights under *Miranda v. Arizona* (1966) 384 U.S. 436. Martinez was never charged with a crime and his answers to the police

10

officer were not introduced against him in a criminal trial. (*Chavez*, *supra*, at pp. 764-765.) However, Martinez filed suit under title 42 United States Code section 1983, arguing the police officer's actions violated his Fifth Amendment right not to be compelled to be a witness against himself in any criminal case and his Fourteenth Amendment due process right to be free from coercive questioning. (*Chavez*, *supra*, at pp. 764-765.)

Six justices of the Supreme Court concluded that a Fifth Amendment violation is not completed "merely by official extraction of self-incriminatory answers from one who has not waived the privilege, but only if and when those answers are *used in a criminal proceeding* against the person who gave them." (*Maldonado*, *supra*, 53 Cal.4th at p. 1128; *Chavez*, *supra*, 538 U.S. at pp. 766-773 (plur. opn. of Thomas, J.); *id*., at p. 777 (conc. opn. of Souter, J., joined by Breyer, J.).) Justice Thomas explained that a Fifth Amendment violation occurs when coerced statements are "admitted as testimony against [a defendant]." (*Chavez*, *supra*, at p. 767 (plur. opn. of Thomas, J.).) In contrast, defendant is not faced with a situation where his coerced statements are to be introduced against him in a criminal proceeding.

Similarly, we find defendant's reliance on *Spielbauer v. County of Santa Clara* (2009) 45 Cal.4th 704 (*Spielbauer*) misplaced. Spielbauer was a deputy public defender who was being investigated by his county employer over allegations he had made deceptive statements to the court while representing a criminal defendant. (*Id*. at p. 709.) During an interview, the supervising attorney informed Spielbauer that his refusal to cooperate would be deemed insubordination, but his answers could not be used in a criminal proceeding. (*Ibid*.) Heeding the advice of his counsel, Spielbauer invoked his privilege against self-incrimination and was thereafter terminated by the county for failing to answer the questions posed by the investigator. (*Ibid*.) Spielbauer sought reinstatement, arguing he could not be compelled to answer potentially incriminating

11

questions unless he received a formal grant of immunity for direct or derivative use of his answers in any future criminal case. (*Ibid.*)

Upon review, the California Supreme Court concluded that "[t]he state and federal self-incrimination clauses say one cannot be made an involuntary witness against himself, or herself, *in a criminal proceeding*. Thus, they do not prohibit officially compelled admissions of wrongdoing as such. They only forbid the *criminal use* of such statements against the declarant. Constitutionally based prophylactic rules, such as a prior-immunity requirement in some cases, have arisen to protect the core privilege, but the right against self-incrimination is not itself violated until statements obtained by compulsion are *used* in criminal proceedings against the person from whom the statements were obtained." (*Spielbauer*, *supra*, 45 Cal.4th at p. 727.) Therefore, the court concluded Spielbauer's dismissal was constitutionally valid. (*Id.* at pp. 729-730.)

As a whole, *Spielbauer* and *Maldonado* are not inconsistent. Both cases hold that the Fifth Amendment is not violated when an individual is compelled to truthfully answer incriminating questions. A defendant's constitutional rights *are* violated, however, if these compelled statements are introduced against him or her in a criminal proceeding. We are required to follow the decisions of the California Supreme Court in *Maldonado* and the United States Supreme Court in *Chavez*. (*Auto Equity Sales*, *Inc*. *v*. *Superior Court* (1962) 57 Cal.2d 450, 455.) Therefore, we are bound to conclude that the probation condition challenged by defendant does not result in a Fifth Amendment violation.

B. *Overbreadth*

Next, defendant challenges the imposed probation condition on the basis that it is constitutionally overbroad. He argues both aspects of the probation condition--the requirement he waive his privilege against self-incrimination and the requirement he participate in polygraph examinations--infringe upon his constitutional rights and

12

therefore must be subjected to additional scrutiny and be narrowly drawn. (*People v. Olguin* (2008) 45 Cal.4th 375, 384.) Defendant insists the probation condition is not narrowly tailored, because it requires the probationer to "discuss any and all matters during the course of the sex offender management program, including but not limited to past or present crimes committed by the probationer." Defendant suggests the condition be stricken or sanitized by requiring a probationer be "truthful" with the probation officer and the sex offender management program.

We disagree with defendant's claims regarding the condition's overbreadth. First and foremost, we have already concluded that requiring defendant to waive his privilege against self-incrimination does not infringe upon his Fifth Amendment rights. Based on *Maldonado* and *Chavez*, merely eliciting incriminating statements does not constitute a Fifth Amendment violation. A violation occurs when the state seeks to *use* compelled statements against a defendant in a criminal proceeding.

However, defendant argues that *U.S. v. Antelope* (9th Cir. 2005) 395 F.3d 1128 holds that a condition requiring participation in polygraph examinations that will disclose uncharged offenses violates the Fifth Amendment. The defendant in *Antelope* challenged a probation condition that required him to submit to " 'periodic and random polygraph examinations' " as part of his sexual abuse program. (*Id*. at p. 1131.) The defendant refused to participate, invoked his Fifth Amendment rights, and was found in violation of his probation and placed in prison. (*Id*. at p. 1132.) Ultimately, the Ninth Circuit concluded that incarcerating defendant after revoking his probation violated the defendant's Fifth Amendment rights. (*Id*. at pp. 1134-1140.) However, *Antelope* is not relevant to defendant's claims. Here, defendant makes a facial challenge to the probation condition. Defendant has not been found in violation of his probation for refusing to submit to the required polygraph examinations.

13

Furthermore, even if we were to conclude the condition placed limitations on defendant's rights, it is narrowly tailored. The condition requires defendant to waive his right to the privilege against self-incrimination and participate in polygraph examinations as part of the sex offender management program. This will help minimize the risk to the public created by the court's grant of a probationary term. Defendant's candid responses to questions posed to him during these examinations will assist in his therapy and treatment and will help determine whether closer monitoring is necessary.

C. *Reasonableness*

Defendant also contends that both aspects of the condition, the waiver requirement and the polygraph examination requirement, are unreasonable under the standard set forth in *Lent*, *supra*, 15 Cal.3d at page 486. Typically, a trial court may "impose conditions to foster rehabilitation and to protect public safety." (*People v. Carbajal*, *supra*, 10 Cal.4th at p. 1120.) Under *Lent*, "[a] condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality.' " (*Lent*, *supra*, at p. 486.)

Both the waiver of the Fifth Amendment privilege and defendant's participation in polygraph examinations are reasonably related to defendant's future criminality. "The overriding purpose of management of sex offenders is to enhance community safety by preventing future sexual victimization." (§ 9000, subd. (d).) Candid participation in the sex offender management program is reasonably required to allow the probation department and program officials to determine appropriate treatment options for a defendant. Treatment of sex offenders includes "specialized interventions delivered by qualified mental health professionals and designed to address the multiple psychological and physiological factors found to be associated with sexual offending." (*Id*., subd. (c).) It is not unreasonable for a trial court to conclude that in order to assist the mental health

14

professionals to develop these specialized treatment plans, defendant must fully disclose the circumstances of his prior offenses.

Defendant relies on *Brown v. Superior Court* (2002) 101 Cal.App.4th 313, which is readily distinguishable. *Brown* involved a probation condition that required the defendant to undergo polygraph examinations at the direction of the probation officer. The court concluded this condition was overbroad, because the court declined to place restrictions on the questions that could be asked by the examiner or to otherwise tailor the condition to specify the examinations were to be for the purpose of furthering defendant's stalking therapy program. (*Id*. at p. 321.) However, the court noted that "periodic polygraph examinations *in furtherance of Brown's stalking therapy program* is a valid condition of probation because it is reasonably related to the crime of which Brown was convicted and to possible future criminality. [Citations.] Thus, the order imposing a polygraph condition must limit the questions allowed to those relating to the successful completion of the stalking therapy program and the crime of which Brown was convicted." (*Ibid*.)

There is no support for defendant's claim that as worded, the probation condition would require a polygraph examiner to "act more like an investigating officer and delve into questions that go far beyond aspects of the sex offender treatment program and the facts of the underlying offense." Unlike the broadly-worded condition at issue in *Brown*, defendant is required to submit to polygraph examinations as part of the sex offender management program. (§ 1203.067, subd. (b)(3).) This limiting language is within the Penal Code section mandating imposition of the probation condition (*ibid*.) and was part of the condition as orally imposed by the trial court. Although the condition does not expressly state that the polygraph examinations shall be constrained for the purposes of the sex offender management program, it is inherent based on its wording. Reasonably,

15

the polygraph examination must be conducted in furtherance of defendant's treatment under the sex offender management program.  Therefore, no modification is required.

2. **Section 1203.067, subdivision (b)(4)**

We now turn to defendant's challenges to the probation condition requiring him to "waive any psychotherapist/patient privilege to enable communication between the sex offender management professional and the probation officer pursuant to Section 1203.067[, subdivision] (b)(4) and Section 290.09 of the Penal Code."

A. *Right to Privacy*

First, defendant contends the probation condition impermissibly infringes on his right to privacy.  "The psychotherapist-patient privilege has been recognized as an aspect of the patient's constitutional right to privacy.  [Citations.]  It is also well established, however, that the right to privacy is not absolute, but may yield in the furtherance of compelling state interests." (*People v. Stritzinger* (1983) 34 Cal.3d 505, 511.)

In *Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, the California Supreme Court concluded there were three essential elements in a state constitutional cause of action for invasion of privacy:  (1) the existence of a specific, legally protected privacy interest (*id*. at p. 35), (2) the existence of a reasonable expectation of privacy on the plaintiff's part (*id*. at p. 36), and (3) there must be a serious invasion of the privacy interest that is "sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right" (*id*. at p. 37).  However, *Hill* acknowledged that "[p]rivacy concerns are not absolute; they must be balanced against other important interests." (*Ibid*.)  Therefore, "[i]nvasion of a privacy interest is not a violation of the state constitutional right to privacy if the invasion is justified by a competing interest.  Legitimate interests derive from the legally authorized and socially beneficial activities of government and private entities." (*Id*. at p. 38.)

The psychotherapist-patient privilege is defined in Evidence Code section 1012, which states that " 'confidential communication between patient and psychotherapist' means information, including information obtained by an examination of the patient, transmitted between a patient and his psychotherapist in the course of that relationship and in confidence by a means which, so far as the patient is aware, discloses the information to no third persons other than those who are present to further the interest of the patient in the consultation, *or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the psychotherapist is consulted*, and includes a diagnosis made and the advice given by the psychotherapist in the course of that relationship."  (Italics added.)

Therefore, "Evidence Code section 1012 codifies an express exception to the psychotherapist-patient privilege that permits disclosure of otherwise privileged communications between patient and psychotherapist to third persons to whom disclosure is reasonably necessary to accomplish the purpose for which the psychotherapist is consulted."  (*In re Christopher M*. (2005) 127 Cal.App.4th 684, 696 (*Christopher M*.), disapproved on a different point in *People v. Gonzales* (2013) 56 Cal.4th 353, 373.)

In *Christopher M*., a minor was granted probation subject to a condition that required all records relating to his medical and psychological treatment be made available to the court and to the minor's probation officer.  (*Christopher M*., *supra*, 127 Cal.App.4th at p. 690.)  On appeal, the minor challenged the condition on the basis that it violated the psychotherapist-patient privilege.  The court concluded the minor's privacy rights were not violated because disclosure was permitted under Evidence Code section 1012.  (*Christopher M*., *supra*, at pp. 696-697.)

Like the disclosure contemplated in *Christopher M*., the waiver at issue here is permitted under the law.  The state has legitimate countervailing interests in requiring waiver of the psychotherapist-patient privilege.  Furthermore, the waiver is specifically

17

limited to enabling communication between the sex offender management professional and the probation officer pursuant to sections 1203.067, subdivision (b)(4) and 290.09. The government certainly has a valid interest in the success of defendant's therapy and an interest in lowering the risk to public safety from defendant's behavior.

B.  *Overbreadth*

Defendant's overbreadth challenge also lacks merit.  As we previously discussed, a probation condition may place limits on a defendant's constitutional rights so long as it is closely tailored to the condition's purpose.  (*In re Sheena K*. (2007) 40 Cal.4th 875, 890.)

The purpose of the challenged condition is to protect the public and to assist in monitoring defendant's progress in the sex offender treatment program.  The probation condition is tailored to effectuate that purpose, requiring defendant to waive his psychotherapist-patient privilege specifically to enable communication between the sex offender management professional and the probation officer pursuant to section 290.09. Section 290.09 requires the sex offender management professional to assess each registered sex offender, to provide defendant's scores on certain risk assessment and future violence tools to the defendant's probation officer or parole agents, and to communicate with the probation or parole officer on a regular basis about the offender's progress and other risk assessment issues.  (§ 290.09, subds. (b)(1), (b)(2), (c).)  The probation condition does not require defendant to waive the psychotherapist-patient privilege outside this context and therefore is not overbroad.

C.  *Unreasonableness*

Lastly, defendant argues the condition is unreasonable under the standards set forth in *Lent*, *supra*, 15 Cal.3d 481.  We disagree.  The probation condition is aimed at minimizing the public safety risk created by defendant's placement in probation by

18

ensuring he is complying with his sex offender management program and is making progress towards his treatment. This is reasonably related to his future criminality.

Furthermore, we reject defendant's contention that this waiver is somehow coerced. Defendant cites to *Regents of University of California v. Superior Court* (2008) 165 Cal.App.4th 672. However, *Regents* is inapplicable. It did not involve the waiver of a psychotherapist-patient privilege in a probation condition. *Regents* discussed the attorney-client privilege under Evidence Code section 912, which states the privilege is waived if the holder of the privilege disclosed privileged communications without coercion.

Additionally, defendant was not coerced into giving a waiver. The Legislature has mandated that every sex offender who is granted probation be subject to this probation condition. Defendant could have declined probation. As a general rule, "[p]robation is not a right, but a privilege. 'If the defendant considers the conditions of probation more harsh than the sentence the court would otherwise impose, he has the right to refuse probation and undergo the sentence.' " (*People v. Bravo* (1987) 43 Cal.3d 600, 608.)

## DISPOSITION

The judgment is affirmed.

_____
                                        Premo, J.

I CONCUR:




_____
            Elia, J.

RUSHING, P.J., Dissenting

For the reasons stated by Justice Márquez in *People v. Rebulloza* (2015) 234 Cal.App.4th 1065, I dissent, but diverge somewhat from the opinion's approach concerning the effect of defendant's statutorily required waiver of the psychotherapist-patient privilege. I believe California's express guarantee of the right of privacy (Cal. Const., art. I, § 1) compels a rule under which the waiver required by Penal Code section 1203.067, subdivision (b), permits the "sex offender management professional" to report to the probation officer upon the defendant's test scores, attendance, and general cooperativeness in the therapy process, but does not otherwise permit the professional to disclose, to the probation officer or anyone else, the content of any otherwise protected psychotherapeutic communications. To the extent Penal Code section 1203.067 may be understood or intended to require or permit disclosure of such communications, I would hold it violative of our state constitutional guarantee of privacy.


_____
RUSHING, P.J.